James S. Link (SBN 94280)
Counselor & Advocate at Law
215 N. Marengo, 3rd Floor
Pasadena, CA 91101
(626) 793-9570
(626) 628-1925 (fax)
james.s.link@att.net

Attorney for Defendant Dirt Dog, Inc.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Brian Whitaker,<br><br>　　　　Plaintiff,<br><br>v.<br><br>BPP East Union LLC, a Delaware Limited Liability Company; Dirt Dog Inc., a California Corporation; and Does 1-10,<br><br>　　　　Defendants. | Case No.: 2:20-cv-06818-MWF-E<br><br>**Memorandum Of Points And Authorities In Support Of Motion To Dismiss For Lack Of Jurisdiction Pursuant To FRCP, Rule 12(b)(1) and (h)(3)**<br><br>Hearing Date: 10/19/2020<br>Time: 10:00 a.m.<br>Courtroom: 5A |

## Introduction

Plaintiff Brian Whitaker is a serial litigant—a high frequency litigant—having filed 950 Americans with Disabilities Act (ADA) /Unruh Civil Rights Act (Unruh) cases. See Exhibit A. He alleges in this case that he visited the restaurant operated by defendant Dirt Dog, Inc. (Dirt Dog) located at 20 Union Street, Pasadena, California, in July 2020—the actual day is not specified. (Doc. 1, pp. 1-2.) He claims discrimination from the following alleged violations in the complaint:

"12. Unfortunately, on the date of the plaintiff's visit, the defendants

failed to provide wheelchair accessible dining surfaces in conformance

with the ADA Standards as it relates to wheelchair users like the

plaintiff.

"13. On information and belief, the defendants currently fail to provide wheelchair accessible dining surfaces.

"14. Additionally, on the date of the plaintiff's visit, the defendants failed to provide wheelchair accessible sales counters in conformance with the ADA Standards as it relates to wheelchair users like the plaintiff.

"15. On information and belief, the defendants currently fail to provide wheelchair accessible sales counters." (Doc. 1, p. 2.)[1]

The foregoing is the full extent of the factual statements of the violations that plaintiff supposedly encountered some time in July 2020 at Dirt Dog. Dirt Dog is one of 21 different businesses located in Los Angeles, Pasadena, Beverly Hills, Glendale, Santa Monica, Camarillo, Rancho Cucamonga or Malibu that plaintiff allegedly visited in the month of July 2019. See Exhibit B. Yet, plaintiff lives in Downtown Los Angeles, does not own a vehicle and does not have a driver's license. See Exhibit C, ¶¶ 3, 7 and Exhibit D, pp. 26, 28 and 39. All these alleged visits by plaintiff to be a customer of each and every business is not plausible.

What is even more implausible is any claim that plaintiff makes that he has a concrete and particularized intent to return to the Dirt Dog or any one of the other 950 businesses he has sued. While the sheer number of businesses visited and sued in 5 years and 4 months is astonishing,[2] plaintiff had and has no mode of transportation of his own to all these businesses. Instead, he relies on friends, Uber or public transportation. See Exhibit D, p. 39.

Whitaker's claimed intent to return is simply not real considering the facts. The cases are contrived. Plaintiff does not have standing to sue because he cannot

---

[1] In truth, plaintiff complains about a table placed in front of the sales counter for social distancing and does not complain about the actual counter. (Doc. 3, p. 3.)
[2] Even more astonishing is the 672 cases filed by Whitaker in 2019. See Exhibit A.

have a concrete, particularized plan to return to the Dirt Dog.

**1.    Pursuant to Rule 12(b)(1) and (h)(3), Defendant may challenge by motion to dismiss this Court's jurisdiction over the subject matter of an action and may properly raise extrinsic evidence to demonstrate plaintiff cannot meet his burden to establish jurisdiction.**

A Rule 12(b)(1) jurisdictional challenge can be facial or factual made at any time in during the litigation. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004); Rule 15(h)(3). In a factual challenge as defendants assert here, the moving party "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039. Where the moving party makes a factual challenge by presenting evidence, "the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Wolfe*, 392 F.3d at 362 (citation and internal quotation marks omitted). In resolving the jurisdictional issue, the court does not accept the allegations in the complaint as true. *Safe Air for Everyone*, 373 F.3d at 1039. "[The court] may hear evidence and make findings of fact necessary to rule on the subject matter jurisdiction question prior to trial." *Rosales v. United States*, 824 F.2d 799, 803 (9th Cir. 1987).

In this case, Dirt Dog presents evidence in the form of plaintiff's deposition testimony in a former case and additional extrinsic evidence, which demonstrate that he has no standing to sue for injunctive relief as argued in the next point.

**2.    Plaintiff cannot show imminent injury, which is required for standing to sue for injunctive relief—the only relief available under the ADA.**

Standing is a threshold jurisdictional requirement, derived from the "case or controversy" language of Article III of the Constitution. *Steel Co. v. Citizens for*

*Better Env't,* 523 U.S. 83, 95, 102, (1998). "A party's standing is a condition of [the court's] subject matter jurisdiction. [Citation.]" *Silver Sage Partners, LTD v. City of Desert Hot Springs*, 251 F.3d 814, 823, fn. 11 (9th Cir. 2001).

Here, subject matter jurisdiction exists only if plaintiff has standing to sue for injunctive relief. Private individuals may recover only injunctive relief under Title III; monetary damages are not available. See *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1120 (9th Cir. 2000) (citing 42 U.S.C. § 12188(a)).

In *D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031 (9th Cir. 2008) the court restated the test for standing for injunctive relief as follows:

> "In the present case, the only issue is whether D'Lil met her burden with respect to the second prong of the 'injury in fact' requirement, specifically, whether she demonstrated that her injury was "actual or imminent" at the time that she filed her complaint. *Lujan* 504 U.S. at 560. In the context of a suit for injunctive relief, this requirement may only be satisfied where a plaintiff demonstrates "'*a sufficient likelihood that he will again be wronged in a similar way*" …. That is, *he must establish a "real and immediate threat of repeated injury*."' [Citations.] … [Italics added.]" (Id. at 1037.)

In the seminal case of *Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992), cited in *D'Lil,* the Supreme Court stated the three elements for standing are:

> "First, the plaintiff must have suffered an 'injury in fact' -- an invasion of a legally protected interest which is (a) concrete and particularized, [citations]; and (b) 'actual or imminent, not "conjectural" or "hypothetical,"' [citation]. Second, there must be a causal connection between the injury and the conduct complained of -- the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before

the court.' [Citation.] Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.' [Citation.]" (504 U.S. at 560-561.)

The court in *Lujan* provides context for the concept that the injury claimed must be imminent. There, the plaintiffs signed declarations that they intended some day to return to a particular location where the government agency funded project would affect the wildlife that they wanted to observe, arguing that they were entitled to an injunction. Rejecting such claims, the Supreme Court in *Lujan* set out the standing principles applicable to plaintiffs seeking injunctive relief:

> "We shall assume for the sake of argument that these affidavits contain facts showing that certain agency-funded projects threaten listed species -- though that is questionable. They plainly contain no facts, however, showing how damage to the species will produce 'imminent' injury to Mses. Kelly and Skilbred. That the women 'had visited' the areas of the projects before the projects commenced proves nothing. As we have said in a related context, '"Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects."' [Citations.] And the affiants' profession of an 'intent' to return to the places they had visited before -- where they will presumably, this time, be deprived of the opportunity to observe animals of the endangered species -- is simply not enough. *Such 'some day' intentions* -- without any description of concrete plans, or indeed even any specification of when the some day will be -- *do not support a finding of the "actual or imminent" injury that our cases require*. [Citation.] [Italics added.]" (Id. at 564.)

In *Summers* v. *Earth Island Inst.,* 555 U.S. 488 (2009) the Supreme Court re-

affirmed the rule of law set forth in *Lujan* in a case in involving the application of Forest Service regulations stating that a "vague desire to return is insufficient to satisfy the requirement of imminent injury… ." (Id. at 496.)

Factually here, Plaintiff testified in a former case that he lives in Downtown Los Angeles. See Exhibit D, p. 26. While that deposition was taken in 2018, plaintiff's declaration signed on March 9, 2020 corroborates the fact that he lives in Downtown Los Angeles. See Exhibit C, ¶¶ 3, 7. His mode of transportation is friends, public transportation or Uber; he does not own a vehicle or have a driver's license. See Exhibit D, pp. 28, 39. His intention to return to Dirt Dog in Pasadena from his Downtown Los Angeles residence or any of the other 20 businesses sued for visits in July 2020 (Exhibit B) or any of the other 950 businesses he allegedly visited can be at best some day only. That is not sufficient for standing to sue. *Lujan*.[3] Even if plaintiff had a vehicle to drive to all 950 businesses he alleges he visited and sued, any claimed intention to return is not plausible; it is at best some day.

In *Langer v. H&R Ltd. Liab. Co.*, 2018 U.S. Dist. LEXIS 225938 (C.D. Cal. Aug. 13, 2018), District Judge André Birotte, Jr. denied Langer's default judgment for his lack of standing to sue ruling Langer's intent to return to a strip mall in Los

---

[3] Plaintiff will likely cite *Civil Rights Educ. & Enforcement Ctr. v. Hosp. Properties Trust,* 867 F.3d 1093 (2017), the tester standing case. But that case does not support standing here. The case is distinguishable because it concerned whether a putative class plausibly alleged standing at the class certification stage. The Ninth Circuit's inquiry was limited to the Named Plaintiffs' allegations in the pleadings, not evidence. *Civil Rights*, 867 F.3d at 1099 ("The relevant question, therefore, is whether the Named Plaintiffs are presently deterred from visiting HPT-owned hotels. We limit our evaluation to the pleadings."). And, "a plaintiff—even a 'tester' plaintiff—must allege sufficient facts to show an intent to return (*Chapman*, 631 F.3d at 949)". *Johnson v. JKLM Props., L.L.C.*, 2020 U.S. Dist. LEXIS 167794, at *9 (N.D. Cal. Sep. 14, 2020).

Angeles from his home in San Diego was not credible:

> "Plaintiff's credibility undermines his professed intent to return. The Ninth Circuit grants great deference to a district court's credibility assessments. See *D'Lil v. Best Western Encina Lodge & Suites*, 538 F.3d 1031, 1040 (9th Cir. 2008). The issue is not whether Plaintiff is a serial ADA litigant, but whether he misrepresented the purpose of his visit to the Strip Mall. *Rocca v. DEN 109 LP*, 684 Fed. Appx. 667, 2017 WL 1089550, at *1 (9th Cir. 2017). **Here, Plaintiff's alleged intent to return does not appear genuine. Plaintiff's litigation history coupled with vague sentiments to return, call into question his stated purpose for visiting this Strip Mall**." (Id. at *8, emphasis added.)

Judge Birotte went on to say:

> "**Plaintiff's lengthy filing history indicates a pattern of meaningless travel.** According to the Court's own calculations, since 2017, Plaintiff has filed approximately seven lawsuits a week in the Central District of California. **This rate of filing counters his sentiment to return to this Strip Mall, let alone return to all hundreds of offending locations**. Thus, unlike D'Lil, Plaintiff has failed to distinguish this location from the hundreds of others he has sued." (Id. at *9, emphasis added.)

In *Whitaker v. LSB Prop. Mgmt., LLC*, 2020 U.S. Dist. LEXIS 108874 (C.D. Cal. June 22, 2020), District Judge Dale S. Fischer applied similar reasoning to Whitaker's travels in granting a motion to dismiss for lack of standing to sue:

> "However, Defendant also makes a factual challenge to Plaintiff's standing. Defendant requests that the Court take judicial notice of 'the fact that, during the fall of 2019, Plaintiff filed several virtually identical lawsuits against other businessowners along [the Restaurant's] street in the Belmont Shore Area of the City of Long Beach.' Mot. at 8.

Specifically, **Defendant contends that Plaintiff apparently 'went up and down the area in the month of October, 2019, encountering multiple barriers at upwards of 12-15 businesses in the Belmont Shore geographic area of Long Beach and 3 businesses in the Naples area of Long Beach.'** Id. at 6. Defendant also notes that Plaintiff is a 'high frequency litigant' under California law. Id. at 8. Although the Ninth Circuit has stated that courts 'must be particularly cautious' when considering 'plaintiff's past ADA litigation,' *D'Lil*, 538 F.3d at 1040, it has not held that such evidence is irrelevant. Therefore, **these facts cast doubt on the plausibility of Plaintiff's allegations that he is deterred from visiting the Restaurant.** …" (2020 U.S. Dist. LEXIS 108874, at *10.) (Emphasis added.)

In *Whitaker v. PQ Americana, Inc.*, 2020 U.S. Dist. LEXIS 71958 (C.D. Cal. Mar. 20, 2020), Judge Fischer granted a motion to dismiss for Whitaker's lack of standing to sue, even without extrinsic evidence presented in the motion to dismiss:

"Plaintiff alleges — without any supporting facts — that he 'is currently deterred from [returning to the Restaurant] because of his knowledge of the existing barriers and his uncertainty about the existence of yet other barriers on the site." Compl. ¶ 18. Although Plaintiff alleged he is a 'California resident,' id. ¶ 1, **he does not allege that the Restaurant is close to his home, or if it is not, facts showing he has an intent to return to the Glendale area and a preference to patronize the Restaurant.** This is insufficient to allege deterrence.

"**The Court's conclusion is buttressed by the fact that Plaintiff has filed hundreds of disability discrimination lawsuits and, consistent with the Court's 'judicial experience and common sense,' could not possibly return to each of the places he has sued.**

[Citation.] Nor is he likely to, given that he can collect $4,000 (plus attorneys' fees) for each new non-compliant location he visits, but gets nothing if he returns to a location that has been made compliant. **The Ninth Circuit has stated that courts 'must be particularly cautious' when considering 'plaintiff's past ADA litigation,'** *D'Lil*, 538 F.3d at 1040, **but has not held that such evidence is irrelevant.** …" (2020 U.S. Dist. LEXIS 71958 at *6-8.)

Whitaker does not allege Dirt Dog in Pasadena is close to home in Downtown Los Angeles and it is not. If he wanted to travel by public transportation, it is about a 40 minute trip one way for the 12 mile journey without the required travel to get to the Metro and to Dirt Dog from the Metro. (Exhibit E.) He also does not allege and cannot allege a preference to patronize Dirt Dog or any preference to businesses in Pasadena. For his alleged July 2020 visits, Whitaker went to businesses in Los Angeles, Pasadena, Beverly Hills, Glendale, Santa Monica, Camarillo, Rancho Cucamonga or Malibu. See Exhibit B. Such is truly "a pattern of meaningless travel" (*Langer, supra*) to "collect $4,000 (plus attorneys' fees) for each new non-compliant location he visits" (*Whitaker v. PQ Americana, Inc.*).

The 9th Circuit in *D'Lil* said, "'it may indeed be necessary and desirable for committed individuals to bring serial litigation advancing the time when public accommodations will be compliant with the ADA.' [Citation.]" However, D'Lil had filed just 62 cases at the time (*D'Lil v. Best Western Encina Lodge & Suites* (C.D.Cal. 2006) 415 F.Supp.2d 1048, 1058), which is a far cry from Whitaker's 950. There comes a point where the constitutional requirements of standing must apply to preclude the type of abusive, shotgun litigation filed by plaintiff Brian Whitaker and others like him. The Supreme Court has

"**always insisted on strict compliance with this jurisdictional standing requirement**. … As we said in *Allen, supra*, at 752, 'the law

of Art. III standing is built on a single basic idea--the idea of separation of powers.' In the light of this overriding and time-honored concern about keeping the Judiciary's power within its proper constitutional sphere, **we must put aside the natural urge to proceed directly to the merits** of this important dispute and to 'settle' it for the sake of convenience and efficiency. Instead, **we must carefully inquire as to whether appellees have met their burden of establishing that their claimed injury is personal, particularized, concrete, and otherwise judicially cognizable**." *Raines v. Byrd*, 521 U.S. 811, 819-820 (1997). (Emphasis added.)

Whitaker has invoked the jurisdiction of the District Courts of this State 950 times claiming as he must that he intends to return to each and every one of the public accommodations he has sued. We submit in an approximate 5 ½ year time span (Exhibit A), an average person would not patronize 950 different businesses. Whitaker's allegations, as found in *Whitaker v. PQ Americana, Inc*. and *Whitaker v. LSB Prop. Mgmt., LLC,* are not plausible generally or in this case.

Whitaker lacks standing to sue. The motion to dismiss should be granted because this court lack subject matter jurisdiction.

Date: September 21, 2020

_____
James S. Link
Attorneys for Defendants